UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| ENTROPIC COMMUNICATIONS, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>CHARTER COMMUNICATIONS, INC.,<br><br>    Defendant. | Case No. 2:23-cv-00050-JRG<br>Case No. 2:23-cv-00051-JRG<br><br>**JURY TRIAL DEMANDED** |

**ENTROPIC'S OPPOSITION TO CHARTER'S MOTION
TO DECONSOLIDATE AND CONSOLIDATE**

**I.  INTRODUCTION**

Charter contends that Entropic should take a one-size-fits-all approach to litigation that ignores the established practices of this judicial district and serves only the convenience of Charter. Entropic's approach to litigation has been thoughtful and crafted with the purpose of filing cases that can be developed and tried manageably in this Court. Charter's motion seeks to undo these efforts. Charter's request to consolidate the MoCA-1[1,2] and MoCA-2[3] cases would create an unwieldy and unmanageable litigation. Charter's companion request to de-consolidate the MoCA-2 and Cable[4] cases would only remove any judicial efficiencies gained by consolidation. *See* MoCA-2, Dkt. No. 35. Accordingly, Charter's motion would not advance judicial economy

---

[1] "MoCA" is a technology that allows multimedia and data to be transported over existing coaxial cable infrastructure.

[2] The "MoCA-1" litigation is *Entropic Communications, LLC v. Charter Communications, Inc.*, No. 2:23-cv-00050-JRG.

[3] The "MoCA-2" litigation is *Entropic Communications, LLC v. Charter Communications, Inc.,* No. 2:23-cv-00051-JRG.

[4] The "Cable" litigation is *Entropic Communications, LLC v. Charter Communications, Inc.,* 2:23-cv-00052-JRG.

and should be denied.

## II. LEGAL STANDARD

"[T]he decision to [consolidate] is entirely within the discretion of the district court as it seeks to promote the administration of justice." *Gentry v. Smith*, 487 F.2d 571, 581 (5th Cir. 1973). Courts consider five factors in determining whether consolidation is appropriate:

(1) whether the actions are pending in the same court;

(2) whether there are common parties;

(3) whether there are common questions of law or fact;

(4) whether there is risk of prejudice or confusion versus a risk of inconsistent adjudications if the cases are tried separately; and

(5) whether consolidation will promote judicial economy.

*Holmes v. City of San Antonio Airport*, No. 5:21-cv-00267-OLG, 2021 WL 2878548, at *1 (W.D. Tex. Apr. 26, 2021).

## III. THE MOCA CASES SHOULD REMAIN SEPARATE

Entropic made a deliberate decision to assert twelve MoCA patents in two separate cases. Entropic's purpose was to file lawsuits that could be developed and tried manageably under this Court's practices, while also ensuring that it could recover for violations of its intellectual property rights. Entropic attempted to stagger the service of its lawsuits to result in cases that are manageable from a schedule, discovery, claim construction, and trial perspective, but Charter voluntarily appeared early in the cases to thwart that effort.

On February 10, 2023, Entropic filed the MoCA-1 and MoCA-2 patent infringement actions, which, taken together address Charter's infringement of twelve patents directed to MoCA technology. *See* MoCA-1, Dkt. No. 1; MoCA-2, Dkt. No. 1. In MoCA-1, Entropic asserted patents directed to the MoCA 1.0 version of the MoCA standard. Similarly, in MoCA-2, Entropic asserted

patents directed to later versions (1.1 and 2.0) of the MoCA standard. Although these twelve patents are directed to the MoCA standard, they address different functionalities and implementations of the standard. For example, the patents asserted in MoCA-1 address the network architecture, node admission, link maintenance, and network coordinator aspects of the MoCA standard. *See* MoCA-1, Dkt. No. 1, p. 3. The patents asserted in MoCA-2 cover different aspects of the MoCA standard, such as Parameterized Quality of Service flows, OFDMA, and clock sync. *See* MoCA-2, Dkt. No. 1, p. 3.

In an effort to ensure that the MoCA cases developed on their own tracks, Entropic served Charter in the MoCA-1 case on February 13, 2023 (*See* MoCA-1, Dkt. No. 10), and delayed serving Charter in the MoCA-2 case as allowed by Fed. R. Civ. P. 4(m). Charter insinuates that Entropic's approach reflects some sort of nefarious attempt to prejudice Charter (Dkt. No. 45 at 2 12), when in fact, it is Charter's *own* conduct that created the situation of which it now complains. Rather than allow the two MoCA cases to proceed on their own tracks, Charter voluntarily appeared in the MoCA-2 case before being served with the complaint.

Charter first sought an unopposed 45-day extension to answer in the MoCA-1 case. On April 10, 2023, Entropic advised Charter in a letter that it intended to file an amended complaint, thus further enlarging Charter's answer date. Entropic filed its Amended Complaint on April 19, 2023. Nonetheless, Charter responded on April 21, 2023, only *two days later*, by moving to dismiss for improper venue (the identical motion it lost in the 2:23-cv-00125 action and has sought mandamus relief). *See* MoCA-1, Dkt. No. 17. In fact, on April 21, 2023, Charter moved to dismiss for improper venue in all three cases, thus voluntarily appearing and obviating further service requirements. *See also* MoCA-2, Dkt. No. 13; Cable, Dkt. No. 13.

Entropic has purposely tried to manage the size and schedule of its cases in view of the case management and trial practices of this district. Twelve patents, even on related subject matter,

cannot all be manageably developed for trial on an aggressive schedule, and tried in a typical one-week trial, without jeopardizing the parties' potential rights. This is not inconsistent with the fact that Entropic has asserted all twelve patents in a single case against a number of defendants in the Central District of California because in venues with different case management and trial expectations, sensible litigants organize cases differently.

Consolidating the MoCA cases would not serve judicial economy but waste it. In addition to the litigation management reasoning discussed above, the cases have been proceeding on different schedules based on the Court's orders to date. The MoCA-1 case has been proceeding according to a Docket Control Order, entered on June 21, 2023. *See* MoCA-1, Dkt. No. 41. Entropic has served its infringement contentions, and Charter's invalidity contentions are due on July 11, 2023, almost two weeks before the MoCA-2 scheduling conference on July 20, 2023. *Compare* MoCA-1, Dkt. No. 41 *with* MoCA-2, Dkt. No. 34 (Order setting Scheduling Conference for July 20, 2023). Consolidating the MoCA-1 and MoCA-2 cases would either delay the schedule in the MoCA-1 case by two to three months, or shorten the expected schedule in the MoCA-2 case. In other words, maintaining the status quo ensures that the Court's schedule is not disrupted.

## IV. THE MOCA-2 AND CABLE CASES SHOULD STAY CONSOLIDATED

De-consolidating the MoCA-2 and Cable cases would not promote any efficiencies in the MoCA-1 case, and would only remove the efficiencies gained by the current *sua sponte* consolidation ordered by the Court.

Entropic filed the Cable case against Charter on February 10, 2023. The Cable case asserts two patents directed to cable technology that, although related to patents asserted by Entropic in an earlier filed litigation against Charter (2:22-cv-00125), they had not yet issued when that case was filed in April 2022. *See* Dkt. Nos. 1-1 and 1-3. As mentioned above, on April 21, 2023, Charter voluntarily appeared in the Cable case by moving to dismiss for improper venue before ever being

served with the complaint. *See* Cable case, Dkt. No. 13. On May 11, 2023, Charter moved to consolidate Case No. 2:22-cv-00125 with the Cable case and substantially delay the schedule and trial setting in the 2:22-cv-00125 case. *See Entropic Communications, LLC v. Charter Communications, Inc.,* No. 2:22-cv-00125-JRG, Dkt. No. 99. Entropic has opposed that motion, now fully briefed.

On June 13, 2023, this Court *sua sponte* consolidated the MoCA-2 and Cable cases (MoCA-2, Dkt. No. 33), and on June 16, 2023, set a Scheduling Conference for July 20, 2023 (MoCA-2, Dkt. No. 34). It was only after the court *sua sponte* consolidated the cases to Charter's dissatisfaction that Charter filed this motion. Moreover, the Court consolidated the MoCA-2 and Cable cases: (a) *after* the parties had fully briefed Charter's redundant motions to dismiss in the MoCA-1, MoCA-2, and Cable cases; (b) *after* Charter filed a motion to consolidate the Cable case with 2:22-cv-00125; and (c) *after* this Court set the schedule in the MoCA-1 case.

The Court has already consolidated the MoCA-2 and Cable cases. To now pivot and rearrange the cases is unnecessary and wastes the parties' and this Court's time and resources. In the current arrangement, seven patents are at issue in the MoCA-1 case and a total of seven patents are at issue in the consolidated MoCA-2 and Cable cases. If the Court were to jump through the hoops of deconsolidating and consolidating the cases as Charter requests, the result would be a consolidated set of MoCA cases with twelve patents and a single Cable case with two patents at issue. This rearrangement will not produce any material efficiencies but would create a single MoCA case of unmanageable size for both claim construction, discovery development, and trial.

In contrast, efficiencies are accomplished under the current arrangement of the cases. Claim construction and discovery work can be done more manageably by remaining divided into two cases involving manageable numbers of patents. Additionally, any relevant decisions by the Court regarding claim construction or other matters can be applied from the MoCA-1 case to the

MoCA-2 case, and likewise from 2:22-cv-00125 case to the Cable case. Cross-use of discovery in separate cases will also yield more efficiencies than attempting to conduct discovery in a single case too big by half. The fact that these efficiencies can be accomplished without any rearranging of the cases also reduces any risk of inconsistent rulings. Finally, and most importantly, as currently arranged these cases can be meaningfully prepared and tried consistent with the pretrial and trial practices of this court. Charter's proposed consolidated 12 patent case could not be tried without unfairly prejudicing Entropic's rights to obtain redress for all of Charter's alleged infringement. From Entropic's perspective, that appears to be the true objective of Charter's delayed motion.

## V. CONCLUSION

For the foregoing reasons, Entropic respectfully requests that Charter's motion be denied.

Dated: July 11, 2023

Respectfully submitted,

/s/ *James A. Shimota w/permission Wesley Hill*
James Shimota (*pro hac vice*)
George C. Summerfield
Melissa M. Haulcomb (*pro hac vice*)
**K&L GATES LLP**
70 W. Madison Street, Suite 3300
Chicago, IL 60602
Tel.: (312) 372-1121
Fax: (312) 827-8000
jim.shimota@klgates.com
george.summerfield@klgates.com
melissa.haulcomb@kglates.com

Darlene F. Ghavimi
Texas Bar No. 24072114
**K&L GATES LLP**
2801 Via Fortuna, Suite #650
Austin, TX 78746
Telephone: (512) 482-6919
Facsimile: (512) 482-6800
darlene.ghavimi@klgates.com

        Peter E. Soskin (*pro hac vice*)
        **K&L GATES LLP**
        Four Embarcadero Center, Suite 1200
        San Francisco, CA 94111
        Telephone: (415) 882-8200
        Facsimile: (415) 882-8220
        peter.soskin@klgates.com

        Wesley Hill
        Texas Bar No. 24032294
        Andrea Fair
        Texas Bar No. 24078488
        **WARD, SMITH & HILL, PLLC**
        1507 Bill Owens Pkwy
        Longview, TX 75604
        Tel: (903) 757-6400
        wh@wsfirm.com
        andrea@wsfirm.com

        **ATTORNEYS FOR PLAINTIFF**
        **ENTROPIC COMMUNICATIONS, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on July 11, 2023, I caused to be served a copy of the foregoing instrument on all counsel of record via electronic mail.

        */s/ Wesley Hill*
        Wesley Hill