IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| ENTROPIC COMMUNICATIONS, LLC, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | CIVIL ACTION NO. 2:23-CV-00050-JRG |
| v. | § | CIVIL ACTION NO. 2:23-CV-00051-JRG |
| | § | |
| CHARTER COMMUNICATIONS, INC., | § | |
| | § | |
| *Defendant.* | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Charter Communications, Inc.'s ("Charter") Motion to Deconsolidate Case No. 2:23-CV-00051-JRG (the "'51 case") from Case No. 2:23-CV-00052-JRG (the "'52 case"), Then Consolidate the '51 Case With Case No. 2:23-CV-00050-JRG (the "'50 case") (the "Motion"). (Case No. 2:23-CV-00050-JRG, Dkt. No. 45; Case No. 2:23-CV-00051-JRG, Dkt. No. 35.) Identical Motions were filed in both the '50 case and the '51 case, and are thus considered together.[1] In the Motion, Entropic requests that the '51 case be deconsolidated from the '52 case, and then that the '51 case be consolidated with the '50 case. (Dkt. No. 45 at 2.) Plaintiff Entropic Communications, LLC ("Entropic") opposes the Motions. (Dkt. No. 56.) For the following reasons, the Court finds that the Motion should be **GRANTED**.

I.   **BACKGROUND**

On February 10, 2023, Entropic filed three patent infringement lawsuits against Charter in this District: the '50 case ('50 case, Dkt. No. 1), the '51 case ('51 case, Dkt. No. 1), and the '52 case ('52 case, Dkt. No. 1.) Entropic alleges the infringement of seven patents in the '50 case ('50

---

[1] All docket references refer to the briefing in the '50 Case unless otherwise noted.

case, Dkt. No. 15), five patents in the '51 case ('51 case, Dkt. No. 11), and two patents in the '52 case ('52 case, Dkt. No. 11). The '50 case is set for trial on December 9, 2024 ('50 case, Dkt. No. 41 at 1), and the currently consolidated '51 and '52 cases are set for trial on October 7, 2024 ('51 case, Dkt. No. 52).

## II. LEGAL STANDARD

Under Rule 42(a), where actions involve a common question of law or fact, "the court *may* . . . consolidate the actions." *Contentguard Holdings, Inc. v. Google, Inc.*, Nos. 2:14-cv-00061-JRG, Nos. 2:13-cv-01112, 2014 WL 1477670, at *4 (E.D. Tex. Apr. 15, 2014) (quoting Fed. R. Civ. P. 41(a)) (emphasis in original)). This rule "is permissive and vests a purely discretionary power in the district court." *Id.* (quoting *Whiteman v. Pitrie*, 220 F.2d 914, 918 (5th Cir. 1955)).

"Courts should consider the following five factors in determining whether consolidation is appropriate: (1) whether the actions are pending in the same court; (2) whether there are common parties; (3) whether there are common questions of law or fact; (4) whether there is risk of prejudice or confusion versus a risk of inconsistent adjudications if the cases are tried separately; and (5) whether consolidation will promote judicial economy." *Holmes v. City of San Antonio Airport*, No. 5:21-cv-00267-OLG, 2021 WL 2878548, at *1 (W.D. Tex. Apr. 26, 2021).

## III. ANALYSIS

Charter argues that the Court should consolidate the '50 case and the '51 case for all pretrial matters because the law and facts substantially overlap, and assents to move up the delayed schedule of the '51 case to match that of the '50 case. (Dkt. No. 45 at 7; (Dkt. No. 60 at 3–4 ("Charter has offered to conduct claim construction and discovery in the '051 case on the same schedule as the '050 case, to prevent any delay.").) It further argues that the Court should deconsolidate the '51 and '52 cases, which Charter alleges are unrelated. (Dkt. No. 45 at 8.)

### A. Consolidation of the '50 and '51 Cases

Regarding consolidation, Charter asserts that the '50 and '51 Complaints are "near-identical and rely on the same allegations," apart from the individual infringement counts asserting different patents. (*Id.* at 3, *comparing* '50 case, Dkt. No. 15, ¶¶ 1–78, *with* '51 case, Dkt. No. 11, ¶¶ 1–78.) In these cases, Entropic alleges infringement by Charter's set-top boxes that implement the Multimedia over Coax Alliance standards ("MoCA standards"). (*Id.* at 1, citing *Entropic Commc'ns, LLC v. Charter Commc'ns, Inc.*, 2:23-cv-00050-JRG (E.D. Tex) (the "'50 case"); *Entropic Commc'ns, LLC v. Charter Commc'ns, Inc.*, 2:23-cv-00051-JRG (E.D. Tex.) (the "'51 case") (collectively, the "MoCA cases").) Indeed, the MoCA cases involve the same technology (the MoCA standard), the same accused products (the set-top boxes), the same accused service (Legacy Time Warner Cable's whole-home DVR service), and will likely involve the same discovery and witnesses. (*See id.* at 1.) Charter urges that consolidation of these two matters will promote judicial economy and will not prejudice Entropic. (*Id.* at 8.)

In addition to pointing out the substantial overlap between cases, Charter urges that Entropic engaged in gamesmanship by filing the '50 and '51 complaints on the same day, promptly serving Charter in the '50 case, then waiting until May 30—the day the '50 case was set for a case management conference—to serve Charter with the '51 complaint. (*See id.* at 5.) In fact, Charter asserts that throughout the meet and confer process, Entropic has admitted that it stalled the '51 and '52 cases so that they would lag behind the '50 case and not be consolidated. (Id. at 6, citing Dkt. No. 45-1, ¶ 3.) Charter alleges that Entropic anticipates separate cases "will let it get double of everything at each pretrial stage (and potentially at trial)." (*Id.*)

Charter argues that the first two consolidation factors heavily favor consolidation of the MoCA cases—it is undisputed that these actions are pending in the same court and the parties are

identical. (*Id.*) Regarding the third factor concerning common questions of law and fact, Charter asserts that Entropic accuses Charter's use of the MoCA standards for each of the twelve patents across both cases. (*Id.*) In particular, it argues that the alleged infringement of the same service—Legacy Time Warner Cable's whole-home DVR service through use of the MoCA standard—is at the core of both cases. (*Id.* at 8–9, internal citations omitted.) Further, Charter argues that the allegations against the MoCA standard implicate the same underlying technologies implemented in the standard (OFDM specifically) and non-infringing standards to the accused MoCA standard (such as WiFi). (*Id.* at 9.) Due to this substantial overlap, Charter contends that the cases will involve the same document production, witnesses, and third parties. (*Id.* at 9–10.)

Charter asserts that the fourth factor also favors consolidation because such will not prejudice Entropic, as both cases are still in early stages. (*Id.* at 10.) It points out that Entropic asserted all twelve patents (spread out here between the MoCA cases) in single complaints in the Central District of California, in three cases against three defendants.[2] (*Id.* at 11.) In view of this, Charter argues that Entropic cannot now realistically claim prejudice by the same twelve patents being consolidated in this District. (*Id.*) Further, Entropic filed the complaints in the MoCA cases on the same day, and Charter responded to both suits on the same day with motions to dismiss for improper venue. (*See* '50 case, Dkt. No. 17; '51 case, Dkt. No. 13.) It argues that any possible inconvenience that may result to Entropic here is outweighed by the enhanced efficiency of jointly handling the numerous, complex issues involved in these cases. (*See* Dkt. No. 45 at 10, citing *Sage Prods., Inc. v. Devon Indus., Inc.*, 148 F.R.D. 213, 215 (N.D. Ill. 1993).) Lastly, Charter argues that consolidation would promote issues of judicial economy by avoiding relitigation of critical

---

[2] *See Entropic Commc'ns, LLC v. Comcast Corp.*, 2:23-cv-01048 (C.D. Cal.) (all 12 patents asserted against Comcast entities); *Entropic Commc'ns, LLC v. Cox Commc'ns, Inc.*, 2:23-cv-01047 (C.D. Cal.) (all 12 patents asserted against Cox entities); *Entropic Commc'ns, LLC v. Dish Network Corp.*, 2:23-cv-01043 (C.D. Cal.) (all 12 patents asserted against DISH entities).

stages of these cases, including discovery, *Markman* hearings, and pretrial motions, all within weeks of each other. (*Id*.) It further contends consolidation would avoid the risk of issue and claim preclusion. (*Id.*)

In response, Entropic argues that the MoCA cases should remain separate lest an "unwieldy and unmanageable litigation" results. (Dkt. No. 56 at 3; *see also* Dkt. No. 62 at 1.) Entropic urges that its delay in service of the '51 complaint was not improper gamesmanship, but rather its permissible and deliberate efforts to "manage the size and schedule of its cases in view of the case management and trial practices of this district." (*Id.*) It contends that its assertion of all twelve patents in the Central District of California is not inconsistent with its litigation management efforts here in view of the different venue "with different case management and trial expectations[.]" (*Id.* at 4.) Indeed, Entropic argues that it is Charter's conduct that created this situation—rather than allowing the two MoCA cases to proceed on their own tracks, Charter appeared in the '51 case before being served with the Complaint. (*Id.* at 3.)

Further, Entropic asserts that consolidation would waste judicial resources due to the cases currently proceeding on different schedules based on the Court's orders. (*Id.* at 4.) In the '50 case, the parties have exchanged infringement and invalidity contentions. (*See id.*) Entropic argues that consolidation would either delay the '50 case by two to three months, or shorten the expected schedule in the '51 case. (*Id.*) Preserving the status quo would be better than either option, according to Entropic. Lastly, Entropic insists that consolidation would unfairly prejudice Entropic's rights to obtain redress for all of Charter's alleged infringement. (*Id.* at 6.)

The Court agrees with Charter that consolidation is warranted here. First, consolidation of the MoCA cases would benefit judicial economy. Entropic does not dispute the substantial factual and legal overlap between these cases. Indeed, it cites only arguments about litigation management

5

and judicial economy in opposition to Charter's Motion. To the extent that Entropic is troubled about this Court's ability to manage a twelve-patent case, those concerns are unfounded. As Charter points out, "[w]ith such substantial questions of law and fact, this case is not too complicated for this Court to handle in a single suit." (*See* Dkt. No. 60 at 3.) Further, Charter requests only pretrial consolidation at this time. The Court may revisit whether twelve patents in a single trial is too burdensome on the Court and the parties at a later date. As of now, the Court is persuaded that the substantial overlap in issues necessitates pretrial consolidation so that the Court and the parties are not burdened with redundant discovery, *Markman* preparation, and pretrial motion practice.

Further, the Court is unpersuaded that consolidation would prejudice Entropic. Consolidation may delay resolution of claims in one case, but this is offset by expediting resolution of claims in the other case. *Hillman Grp., Inc. v. Keyme, LLC*, 2020 WL 6938441, at *3 (E.D. Tex. Oct. 23, 2020). Notably, the docket control order in the currently consolidated '51 and '52 cases sets out a schedule in which key dates are earlier than in the '50 case.[3] (*Compare* '51 case, Dkt. No. 52, *with* '50 case, Dkt. No. 41.) Consolidation of the MoCA cases to follow the '50 case's docket control order would actually afford Entropic more time to litigate, rather than less. As noted above, consolidation only applies to pretrial matters at this time, such that Entropic's entreaty regarding the unfairness of a twelve-patent trial is not relevant to the relief requested in the Motion. Accordingly, the Court finds that the '50 and '51 cases should be consolidated and proceed on the '50 case's schedule.

---

[3] For example, the *Markman* hearing is set for June 12, 2024 in the '50 case, and for April 24, 2024 in the '51/'52 cases. Close of fact discovery and trial settings are also earlier in the '51/'52 cases than in the '50 case.

### B. Deconsolidation of the '51 and '52 Cases

Charter argues that the '52 "Cable" case is unrelated to the MoCA cases—there, Entropic "asserts a separate set of patents and accuses Charter's cable television and internet services rather than MoCA functionality." (Dkt. No. 45 at 4, citing U.S. Patent Nos. 11,381,866 (the "'866 Patent") and 11,399,206 (the "'206 Patent").)[4] Charter contends that the consolidation factors on balance weigh heavily against consolidation of these cases. (*Id.* at 13.) It asserts that there are no common questions of law or fact between the '51 and '52 cases—they do not concern the same technology, do not implicate the same equipment or services, will not involve the same witnesses, and will involve different third parties. (*Id.*) Further, it argues that Entropic will not be prejudiced by deconsolidation due to the early stage of the proceedings. (*Id.*) Charter points again to the cases in the Central District of California, where the related "Cable" cases are consolidated.[5] (*Id.* at 14.) Lastly, Charter notes that key stages of the litigation will remain disjointed if the '51 and '52 cases remain consolidated due to the lack of a single coherent technological theme. (*Id.*)

Entropic, on the other hand, opposes deconsolidation of these two cases. (Dkt. No. 56.) It argues that deconsolidation would remove efficiencies gained by the current *sua sponte* consolidation ordered by the Court. (*Id.* at 4.) Entropic's argument focuses on the distribution of patents asserted per case if this Motion were to be granted—the consolidation of the '50 and '51 cases would result in an action involving twelve patents, while deconsolidation of the '51 and '52 cases would leave the single "Cable" case with only two patents at issue. (*Id.* at 5.) It argues that efficiencies are accomplished under the current arrangement of cases, asserting that claim

---

[4] Charter filed a separate motion to consolidate the '52 case with *Entropic Commc'ns, LLC v. Charter Commc'ns, Inc.*, 2:22-cv-00125-JRG (E.D. Tex.) (the "'125 Case"). Any arguments regarding the consolidation of the '52 case and the '125 case are addressed by separate Order of the Court.

[5] *Entropic Commc'ns, LLC v. Comcast Corp.*, 2:23-cv-01050 (C.D. Cal.) (all 8 cable patents asserted against Comcast entities, same as 22-cv-00125 and 23-cv-0052); *Entropic Commc'ns, LLC v. Cox Commc'ns, Inc.*, 2:23-cv-01049 (C.D. Cal.) (all 8 cable patents asserted against Cox entities, same as 22-cv-00125 and 23-cv-0052).

construction and discovery will be much more manageable if the status quo remains. (*Id.*) Tellingly, Entropic insists that any relevant decisions by the Court can be applied from the '50 case to the later '51 case, and from the '125 case to the later '52 case. (*Id.* at 5–6.)

The Court agrees with Charter that the '51 and '52 cases should be deconsolidated. Again, Entropic does not dispute the dissimilarity of the legal and factual issues in these two cases. Instead, it relies on arguments regarding the distribution of the number of patents in the cases at issue, emphasizing again the complexity resulting from consolidation of the MoCA cases. However, this Court is well-equipped to handle complex patent case management and trials. The lack of common subject matter in these cases demonstrated by Charter's Motion convinces the Court that deconsolidation is warranted.

## IV.   CONCLUSION

Having considered the Motion, the related briefing and argument, and for the reasons stated herein, the Court finds that the Motion should be and hereby is **GRANTED**. Accordingly, it is **ORDERED** that Case Nos. 2:23-CV-00051 and 2:23-CV-00052 are hereby **deconsolidated**, and that Case No. 2:23-CV-00050-JRG is **consolidated** with Case No. 2:23-CV-00051-JRG for the purposes of pretrial. Further, it is **ORDERED** that Case No. 2:23-CV-00050-JRG shall be the lead consolidated case, and that Case No. 2:23-CV-00051-JRG shall proceed according to the lead case's docket control order for all pretrial matters. The Court carries the issue of a consolidated trial in the '50 and '51 cases for further consideration and action at a later date.

**So ORDERED and SIGNED this 29th day of August, 2023.**

RODNEY GILSTRAP
UNITED STATES DISTRICT JUDGE